**OKLAHOMA FURNITURE MANUFACTURING COMPANY et al., Appellants,**

v.

**Harley HUFF et ux., Appellees.**

**No. 6897.**

Court of Civil Appeals of Texas.

Beaumont.

April 20, 1967.

Orgain, Bell & Tucker, Beaumont, for appellants.

Barber, Seale & Stover, Jasper, for appellees.

PARKER, Justice.

This is a common law damage suit brought by Harley Huff and wife, Betty Huff, against Oklahoma Furniture Manufacturing Company and Melvin Lee Taylor resulting from an automobile-truck collision occurring December 14, 1965. On a judgment based on a jury verdict, the damages awarded were $1,000.00 for Harley Huff's personal injuries, $4,000.00 for Betty Huff's personal injuries and $616.23 for automobile damages. No appeal is taken as to the item of automobile damage. The parties will be designated plaintiffs and defendants as in the trial court.

Mrs. Betty Huff was six months pregnant at the time she was injured in this collision. After the wreck her stomach, knee and wrist hurt. Because of her condition of pregnancy, she was most concerned about her stomach. This was her first pregnancy. In a week or so her stomach ceased to trouble her. In a short period of time her knee ceased to pain her. Her whole hand was numb and she experienced difficulty using her fingers. This was the right hand. This trouble with the wrist, hand and fingers continued some three months, accompanied by pain. On the right wrist was a deep bruise and a cut. During this three month period she tried to keep house for herself and her husband although handicapped by the injury to her right wrist, numbness in the arm and trouble with her fingers. In due course she had her child with a normal birth. At that time she had recovered from injuries received in this accident. Both Harley Huff and his wife were most alarmed about the fact that his wife was six months pregnant. Naturally, they were worried and experienced mental anguish as to the possibility of injury to the baby.

Harley Huff was hurting all over after the accident. The doctor taped his ribs and placed a corset affair on him to keep him from moving and bending. After the loss of one day's work, Huff went back to work, wearing his corset arrangement for three weeks to a month. He was sore, stiff and spitting up blood on occasions. It was almost impossible for him to work but having no other source of income he did work. He was affected by the injuries he received in the wreck for 3 to 4 months. These injuries during the three month period prevented him from making overtime which he would have made but for his injuries. Harley Huff testified:

"Q. Did—did this injury affect your being able to work as much overtime as you would have liked to work?

A. I couldn't have made sixteen hours of the same stuff after the wreck happened.

Q. What I'm saying, did you miss some overtime you might could have gotten to work?

A. Yes, sir, I turned down a lot."

Also Betty Huff testified:

"Now, during the period of this three to four months when he was still having pain, did he complain to you of having pain * * *

A. Yes, sir.

Q. —when he was having pain? When he would have to get up and go to work did he complain to you of the pain he

was having but he had to go to work anyway?

A. Yes, sir.

Q. And as you say, this was your only source of income?

A. Yes, sir."

Harley Huff was employed by East Texas Pulp & Paper Co. He was a shiftworker. He had earned as much as $299 a payday, including overtime, being paid every two weeks. His hourly wage was $2.29½. For overtime, he was paid time and one-half. During the four months after his injury, he made $165 a payday without any overtime.

■ In answer to special issue 15 the jury found that $4,000.00 would fairly and reasonably compensate the plaintiffs for the damages sustained by Betty Huff in the collision. In answering this special issue the jury was instructed as follows:

"In answering this special issue you may take into consideration these elements of damages, and none other:

"(a) The physical pain and mental suffering, if any, sustained by the plaintiff Betty Huff from the time of the collision to the date of trial, proximately caused by the collision in question.

"(b) The diminished ability to perform household duties, if any, sustained by the plaintiff Betty Huff from the time of the collision to the date of trial, proximately caused by the collision in question."

Defendants excepted and objected to special issue 15 and especially paragraph (b) because: "(1) There is no pleading to support the submission of such element of damages; and (2) There is no evidence of any diminished ability of Betty Huff to perform her household duties from the time of the collision to the date of the trial." Defendant asserts error in allowing the jury to consider Betty Huff's loss of ability to perform household duties since there was no evidence to raise such loss. It is a mat-

ter of common knowledge that household duties require the use of arms and fingers. Such handicap in performing the household duties was not a substantial element of damages by reason of Betty Huff's injuries but there is evidence of her diminished ability to perform household duties. Considering the evidence most favorable to the finding of the jury, this point of error is overruled.

■ Defendants also urge there was no evidence of any loss on the part of Harley Huff of his earning capacity. As part of the damage issue as to Harley Huff, complaint is made of the instruction authorizing the jury to consider:

"(b) The diminished earning capacity, if any, sustained by the plaintiff Harley Huff from the time of collision to the date of trial, proximately caused by the collision in question."

Defendants objected to same as follows:

"Defendants except and object to Special Issue No. 14 and especially paragraph (b) since there is no pleading to support the submission of such element of damage and there is no evidence in the record of any diminished earning capacity or loss of earnings on the part of Harley Huff."

Considering the evidence most favorable to the finding of the jury, this point of error is overruled.

■ Defendants' other points of error assert: The award of damages to Mrs. Betty Huff was grossly excessive as a matter of law and should be set aside or a remittitur ordered; the jury's answer as to damages to Betty Huff were of such magnitude and excessive that it was a result of passion or prejudice and was clearly the result of a complete disregard of the evidence and should be set aside or a remittitur granted; the award of $1,000.00 damages to Harley Huff was grossly excessive as a matter of law and should be set aside or a remittitur ordered; and the

jury's answer to special issue as to Harley Huff's damages was so excessive that it was the result of passion or prejudice and was clearly the result of a complete disregard of the evidence and should be set aside or a remittitur granted.

This court is required to exercise "its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation" and apply the rule set forth in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993, 994 (1916), which was re-affirmed in Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959).

Having considered the evidence and judgments in similar cases, this court does not consider the judgment excessive as to any item. All of defendants' points of error are overruled.

Judgment of the trial court affirmed.